Jeffrey B. Cloud (Arizona Bar No. 031853)
JCloud Law, P.C.
7373 E. Doubletree Ranch Rd., Suite 200
Scottsdale, AZ 85258
Tel: 480.378.3543
Fax: 480.378.6556
jeff.cloud@jcloudlaw.com
*Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Steven Ray Garner,<br><br>Defendant. | Case No.: CR25-08037-PCT-DJH<br><br>**DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE** |

Steven Ray Garner, by and through undersigned counsel, respectfully submits this Sentencing Memorandum and Motion for Downward Variance. Mr. Garner pled guilty to Possession or Receipt of Goods Stolen from an Interstate Shipment in violation of 18 U.S.C. § 659. For the reasons stated below, Mr. Garner moves for a downward variance and respectfully requests a sentence of eighteen (18) months, followed by a term of three years of supervised release. Sentencing is scheduled for February 9, 2026.

**I.  Sentencing Considerations**

The Court must impose a sentence that is sufficient, but not greater than necessary to meet the purposes of the sentencing statutes, namely retribution, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a). Other factors to be considered in determining a particular sentence include: "the nature and circumstances

of the offense and the history and characteristics of the defendant;" "the kinds of sentences available;" "the applicable sentencing range established by the sentencing guidelines;" "any pertinent policy statement issued by the Sentencing Commission;" "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct;" and "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1),(3)-(7).

The Sentencing Guidelines are only one of the factors that the Court is to consider. While the guidelines may serve as the "starting point and the initial benchmark" for sentencing decisions, *Gall v. United States,* 552 U.S. 38, 49 (2007), the district court may not presume the guideline range is reasonable. *United States v. Carty,* 520 F.3d 984, 991 (9th Cir. 2008). Considering the guidelines and the other §3553(a) factors, the district court must make an individualized determination based on the facts." *Carty,* 520 F.3d at 991. This may include a determination in a particular case that a sentencing guidelines range "is 'greater than necessary' to serve the objectives of sentencing." *Kimbrough v. United States,* 552 U.S. 85, 91 (2007). Such a determination need not be justified by "extraordinary" circumstances. *Gall,* 552 U.S. at 47.

## II. A Sentence of 18 Months Incarceration is Appropriate Based on the Applicable § 3553(a) Factors and Other Grounds for Granting A Variance

1. Nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18. U.S.C. § 3553(a)(1):

The nature and circumstances of this case are egregious on their face, which allege a brazen and organized, potentially cartel led, daytime heist of a moving train. However, a closer inspection of Mr. Garner's role in the incident is far less egregious. Pursuant to the factual basis in the plea agreement, which was specifically amended by the parties so that it accurately reflected Mr. Garner's participation in this incident, Mr.

Garner did not know until after his arrest that the goods in the vehicle he was driving were from a train robbery. Doc. 43 at p.8. This is evidenced by Mr. Garner's initial post-arrest statement to law enforcement. "When informed he would be charged with fleeing, trafficking stolen property, and burglary of a train, the defendant stated he "didn't know that part." Doc. 43 at p.5, ¶ 11.

As documented by the Presentence Investigation Report [Doc. 43], which reflects over 30 years of Mr. Garner's adult criminal history, Mr. Garner has no criminal history or affiliation of any kind with criminal organizations or organized crime. Doc. 43, p. 9 – 14. At the time of this incident, Mr. Garner had lost his employment and was separated from his wife. He went to California to visit friends and regroup. Unfortunately, needing money to return home, these friends offered him a quick job which ultimately got him involved in this incident.

2. <u>To afford adequate deterrence of criminal conduct pursuant to 18. U.S.C. § 3553(a)(2)(B):</u>

Unfortunately, Mr. Garner lost his mother in August, 2024; however, he still has strong family support. His father remains in Nogales, Arizona, at 84 years of age. He also has an older sister in Buckeye, Arizona and an older brother in Tennessee. Mr. Garner's son resides in Missouri, with whom Mr. Garner will reside upon his release from incarceration. While his wife still supports him, his current incarceration has aggravated the marital issues that caused his initial separation from his wife. Both his son and sister have written character letters from this Court's consideration.

Collectively, between being separated from his wife, son, and other family members, and the chance of losing his elderly father while he is in federal prison, he has been adequately deterred from future criminal conduct.

3. <u>To protect the public from further crimes of the defendant pursuant to 18 U.S.C. § 3553(a)(2)(C).</u>

Given that Mr. Garner has no previous criminal history or affiliation of any kind with criminal organizations or organized crime, there is reason to believe that this was an isolated incident involving a poor decision, greatly influenced by his substance use and need to make money to return to his home in Nogales. Accordingly, Mr. Garner's likelihood of recidivism is extremely low, and a lengthy term of imprisonment is not necessary to protect the public from him.

4. <u>To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner pursuant to 18 U.S.C. § 3553(a)(2)(D):</u>

Mr. Garner has utilized his time in federal jail as productively as he can, to better his life.  He has completed both anger management and substance abuse coursework through the jail. While some programming, including substance abuse counseling, may be available to him while incarcerated, Mr. Garner really needs professional level substance abuse counseling that is not available to him in prison. While he believes he is currently sober, given the length of his substance abuse history, as documented in the Presentence Investigation Report [Doc. 43 at p.17], he is aware substance abuse treatment is a special condition of his conditions of supervise release and is willing to participate. Accordingly, he is ready and willing to make a positive change in his life and could utilize the services of supervised release to continue his sobriety through counseling once he is released from prison.

5. <u>The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct pursuant to 18 U.S.C. § 3553(a)(6):</u>

The Offense Level Computation in the Presentence Investigation Report provides for an Adjustment for Role in the Offense, granting a decrease by two levels as Mr. Garner was deemed a minor participant. While Mr. Garner does not object to this adjustment, an analysis under the Commentary to the Sentencing Guidelines, §3B1.2, suggest that it may be appropriate to provide further adjustment. The applicability of an adjustment under §3B1.2 is a fact-based determination under Application Note 3(C), which considers the totality of the circumstances and a consideration of the following facts:

i.    *The degree to which the defendant understood the scope and structure of the criminal activity;*

As stated in the Presentence Investigation Report and the Factual Basis in the Plea Agreement, there is no information that Mr. Garner had knowledge of a train robbery or of the numerous other participants in this incident. Doc. 43, p. 6-7, ¶¶ 19, 22.

ii.    *The degree to which the defendant participated in planning or organizing the criminal activity;*

As stated in the Presentence Investigation Report and the Factual Basis in the Plea Agreement, there is no information that Mr. Garner had knowledge of or participated in any planning or organizing this train robbery. Doc. 43, p. 6-7, ¶¶ 19, 22.

iii.    *The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;*

As stated in the Presentence Investigation Report, Mr. Garner was asked to drive a vehicle, and would be paid to do so. Another individual was in the vehicle that gave him directions. This individual threated him not to stop once law enforcement attempted to pull the vehicle over. Doc. 43, p. 6-7, ¶ 19.

*iv.    The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;*

Mr. Garner waited in his friend's vehicle on a highway exit outside Kingman, Arizona, which is evidenced by the GPS data in Mr. Garner's phone that was provided in discovery. A cargo van pulled up, and Mr. Garner was instructed to get into it and drive. Mr. Garner was stopped by law enforcement only a few miles from where he took control of the van.

*v.    The degree to which the defendant stood to benefit from the criminal activity.*

As stated in the Presentence Investigation Report, Mr. Garner did not know how much he was going to be paid to drive the truck. Doc. 43, p. 6, ¶ 19.

Give the above fact-based determination, Mr. Garner had no knowledge of the scope or structure of the criminal activity and did not participate in the planning or organizing of the criminal activity. Furthermore, Mr. Garner had no decision-making authority during his involvement, as he was instructed where to drive by another individual. Mr. Garner's participation consisted only of driving a cargo van containing stolen property for only a few miles before he was apprehended by law enforcement. Finally, Mr. Garner did not even know how much he was to be paid to drive the van. Accordingly, given a totality of the circumstances, including the many parts of this criminal activity that Mr. Garner had no knowledge of, *most importantly*, that a train was robbed, and the above fact-based analysis, it may be appropriate to provide an Adjustment for Role in the Offense and deem Mr. Garner a minimal participant. Such and adjustment would decrease the offense level by 4, resulting in a total offense level of 15. A corresponding Criminal History Category III would result in a recommended 24-30 months.

### III.    Conclusion

Mr. Garner's conduct, while serious, is not part of an ongoing pattern of problematic behavior. Instead, it is an anomaly based on a poor decision while Mr. Garner was struggling with unemployment and marital issues. Extensive incarceration is neither necessary nor warranted under these circumstances. Given all of the applicable § 3553(a) factors, and additional mitigation, Mr. Garner's requested sentence is appropriate.

Respectfully submitted: January 30, 2026

**JCLOUD LAW, P.C.**

By:    /s/ *Jeff Cloud*___

Jeffrey B. Cloud
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of January, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Hon. G. Murray Snow
United States District Court

Maria R. Gutierrez, Esq.
Assistant United States Attorney,
U.S. Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, AZ 85004
(602) 514-7500
Attorney for Plaintiff